My name is Kendrick Young and I represent Bob Carey, the debtor and appellant. In 2005, Mr. Carey agreed to guarantee a secure debt for his friend, Mr. Zebny. The plaintiff here sold the restaurant and took back the security interest on the restaurant equipment. The plaintiff was paid its principal back in full. The only unpaid debt was for a bonus payment because the restaurant's sales exceeded a certain amount. When the restaurant fell on hard times, plaintiff pursued collection efforts against the restaurant itself and Mr. Zebny. It also sued Mr. Carey on account of the guarantee. The time was 2009. They filed a complaint against Mr. Carey and at that time the economy was collapsing. Everyone suffered declining real estate values and there was a lack of credit and income. In the process, plaintiff forgot to renew its security interest in the restaurant equipment and thereby became unsecured. It's important to remember that all of this litigation on all of this pain and suffering on Mr. Carey could have been avoided if the plaintiff just spent 15 minutes and renewed its security interest. The plaintiff would have been paid in full. At the time that he entered into the guarantee, Mr. Carey thought that he had fully disclosed his financial affairs, but he made a mistake when signing a document prepared by the plaintiff's attorney as the status of the liens on his house. He did not intentionally misrepresent his financial condition. Nonetheless, the trial court found that a $35,000 debt was non-dischargeable under 11 U.S.C. 523A2B, a false written financial statement. The plaintiff's attorneys did mention attorney's fees at trial, but it did not go into detail. At the end of the trial, the judge awarded only a $35,000 debt against Mr. Carey and Mr. Carey chose not to appeal. He wanted finality. $35,000 appeared to be the amount in the judgment, appeared to be final, and appeared to be manageable. The 14-day deadline for filing a notice of appeal had passed. Around that same time period, the trial court denied plaintiff's request for costs on the basis that the judgment did not award costs. Weeks later, the plaintiff filed a motion seeking $43,000 in attorney's fees. The key unfairness here is that the attorney's fees were more than the actual contract damages of $35,000. Mr. Carey would have appealed, and there was a valid basis for appeal, the failure to mitigate or a lack of proximate cause, but yet Mr. Carey did not appeal because he thought the judgment was final when it said $35,000 damages, and that was it, and it was silent on attorney's fees. At the hearing on the motion for attorney's fees, the trial court denied the motion on the basis of rule. Counsel, if we allow this to proceed, are you going to contest the attorney's fees? There is an issue of reasonableness, but our position is just that it's a mathematical calculation. That's it, whether or not $43,000 is reasonable in light of the $35,000 judgment. Right, but reasonableness takes in a lot when it comes to attorney's fees. You have sort of total number of hours versus what the billing rate is, whether you're charging for paralegal time, whether all of the hours are germane to the action. Are you contesting any of that, or are you going to concede all of that? More or less concede all of that. There is no money to hire a billings expert, and quite frankly, this is the last shot to get justice here for my client. In fact, there is really not a whole lot of money here to be spent on line-by-line analysis of the attorney's fees and other considerations in that vein. Were there going to be other questions about the attorney's fees in the bankruptcy court, for example? Whether they should be awarded on, say, the state proceedings? Were there going to be questions about should they really have been a separate motion? What other questions might be raised? I believe those are valid. Besides anything about the amount of fees? I absolutely agree that those are valid points and issues, but I also believe that the standard is that the trial court has great discretion in determining the fairness and allowance of attorney's fees in the particular amount, and if the trial court allows a wide multitude of attorney's fees, I think that it does have that discretion. So how much does the other side ask for in attorney's fees? At this point, it's $43,000. At this point, why did you qualify that? I do not know if they will also add in the cost of appeal. Are you conceding the $43,000 then? I'm saying that whatever the trial court ultimately decides to grant, I will concede that. Right, but ultimately decides to grant is just loaded. I mean, you could contest all kinds of things. I thought that you were contesting whether the bankruptcy court could make a determination of fees in a state court proceeding, whether the attorney's fees were owed under the contract, whether you had appropriate documentation. Are you conceding all of those points now at this point? I'm saying that I will bring that to the attention of the trial court, and whatever decision the trial court makes, we won't appeal. But if you bring it, counselor, if you bring that to the attention of the trial court, you know where I'm going with this. If you bring this to the attention of the trial court, aren't you contesting the amount of the fees? And if you're contesting the amount of the fees, then how do we have jurisdiction because you don't have a final order? I believe the standard is the Viling Standards and its flexible finality, and we've briefed the issue of why we think... Well, it may be a little bit flexible, but if you are planning on going back and raising any questions at all, then it creates the possibility of a piecemeal appeal, which we decide one question now and one question later. That's why we generally put all of these things together and say, well, once you have an attorney's fee award, then you may take an appeal. And if you want to contest whether there's any fees owed at all or whether just the district court abused its discretion, awarded too much, those are all good questions that can be raised in a single appeal. This isn't that appeal. Let me approach this from a different aspect then. I believe that the question before this court, if answered, would completely eliminate the need to even consider attorney's fees. And that's not unusual, counsel, for us to understand that in the course of a proceeding that there may be questions, that may be ultimate questions that will eliminate the need for further proceedings. But we still don't allow, unless a district court certifies an interlocutory appeal, that those questions be taken. The one exception that we have is when you are immune from trial. And that would be an immunity such as in 1983 or a Bivens action. This isn't that case. Absolutely. I believe there's an unsettled issue of law in that the way that the BAP made its decision, it undercut the legs of Odom but never overruled Odom. And it left the law in a state of flux. And I do believe that for the benefit of the legal community, we do need guidance as to what does Rule 7008 mean. Perfectly understandable. And you may be very well positioned to make that argument. But why do you get to make it now before we have a final judgment? The facts in this case are ready and they've been briefed. We're not going to be able to afford to come back here a second time. But if you haven't conceded the attorney's fees, if you haven't said, it's either $43,000 or nothing, whatever the figure is, it's $43,000 or nothing. I mean, in all practicality, if we don't get this heard on the merits today, there's not going to be any more litigation. They have not collected anything on the original $35,000. My client is destitute. This is it. This is our only shot. And if we don't get it heard on the merits, we will be denied the opportunity to get a decision on the merits. This is our last shot. And that's why I'm begging this court to consider the issue. It's important. Do you understand what the judge is saying to you? We have to find jurisdiction before we can act, don't we? Absolutely. I do agree. And that's the question. I think the question, to rephrase your question, is whether or not we are going to litigate the issue of attorney's fees further if this gets sent down. And my response is I do not believe, I'm certain that it will not be litigated further because there's just no money. It's not practically possible for him to litigate that issue. He hasn't even paid on the original $35,000. If you had conceded the fees, taken a default judgment on the fees or something like that, this would be a very different case because then we would have a final judgment entered against you. But as long as there's a possibility that you are going to contest any amount of the fees, and I understand this is a practical problem for your client, but as long as there's a possibility and you haven't told me that there's no possibility of that, and I'm not even sure that you can do that here on appeal unless you're willing to concede in front of counsel the amount of the fees. I'm going to go ahead and take that leap and I'll concede the amount of $43,000 that's set forth in their motion that we will not contest that amount. But not any amount for the appeal here. Well, that depends on whether we win or they win the appeal, right? Well, then we still have an additional question then, don't we? But that would happen in every case where we were in the middle of the appeal and it wasn't determined yet who had won the appeal. All right. Let's hear from the other side. We are absolutely going to need some time here. May it please the Court. Elizabeth Schumacher on behalf of Charlie Y. Inc. With regard to this issue of jurisdiction, if we apply the Bilene factors, we believe that this Court does not have jurisdiction precisely because of the piecemeal litigation and judicial efficiency. In effect, we think that Mr. Kerry is putting the cart before the horse, precisely because counsel has not conceded that he will pay any amount of attorney's fees. I thought he just conceded that he would pay $43,000. Yes. That was a nice concession. He conceded that, but that does not include the amount of attorney's fees that increased, because that was before any appeal. But we appealed the case to the Bankruptcy Appellate Panel. And before we appealed, there was actually a dialogue in court, and the transcript of the motion, of the hearing on the motion for attorney's fees, was actually included in the documents. So what the $43,000 doesn't include is the amount of fees for the appeal to the BAP? That's correct. And Mr. Kerry was put on notice of that by the judge at the Bankruptcy Court level. He said, and I'm reading from the transcript, and in effect, I'm going to invite an appeal, which, if Ms. Schumacher's client wins, Mr. McCallum, inevitably means that the fees are going to be more, hazard of the course. And further along, the judge also says, and Mr. McCallum, if Ms. Schumacher takes it up and wins, your client is probably going to be on the hook for attorney's fees for the appeal. And in accordance with that, we— The appeal there referring to the appeal to the BAP, not to the appeal to this court. That is correct, Your Honor. And how much additional would that be? Approximately $60,000 more. $60,000 for the appeal? To the bankruptcy appellate panel. Yes, Your Honor. And that, of course, does not include fees for this appeal either. Right, which couldn't be determined. I mean, that would— That's right. And they're non-dischargeable? They're non-dischargeable. They are non-dischargeable because they are part of the debt. That's correct. The underlying agreement had an attorney's fees clause provision. And in his answer to the complaint in the adversary proceeding, Mr. Kerry himself requested attorney's fees, and we're assuming that that's because of California Civil Code Section 1717A, which provides reciprocity. So he was aware, we believe, of the attorney's fees clause. In your view, what would the bottom line of this court's decision be? That at this time this court has no jurisdiction. And arguing in the alternative, if it did, I think the court should affirm the decision of the bankruptcy appellate panel finding that the claim for attorney's fees was properly pleaded as a claim in the complaint, and that the motion was timely. So if we were to send this back, we would find that we didn't have appellate jurisdiction. And we sent this back, what happens? It goes back to the bankruptcy court? It goes back to the bankruptcy court for a decision on the award of fees. And then what we would discuss would be the scope of the attorney's fees, whether it includes this case started in Marin County Superior Court with a claim filed in the state court. And the reason there was an adversary proceeding is because in the interim, Mr. Kerry declared bankruptcy. And due to fraud on the agreements with my client, we went to the meeting of creditors, discovered the fraud, and then filed an adversary proceeding to accept from this charge the entire amount owed. The $43,000, though, that includes the state already? There's a small amount that is state, yes. Are you going to be asking for more for the state? Currently it's state in state court. And so we would ask for the state as well because the wording of the attorney's fees clause. Would you be asking for additional fees beyond the $43,000 because of the state proceeding? No, Your Honor. The state amount was included in that $43,000. So if he concedes that, that issue is not important anymore, right? That's correct. Also, in discussing the violin factors, I discussed the need to avoid piecemeal litigation, and I think that factor weighs very heavily in favor of no jurisdiction by this court. But there are three other factors that haven't been discussed, and that's judicial efficiency, preserving the bankruptcy court's role as a finder of fact, and irreparable harm. Starting with the easiest one, I think neither side has shown that there will be irreparable harm if there's a decision to weigh on the attorney's fees. So using Bender as authority for this, this factor should weigh against jurisdiction by this court. Also, preserving the bankruptcy court's role as a finder of fact, most of the issues, I believe, are issues of law, and there may be some issues of fact. And if that's the case, then weighing this factor against jurisdiction is the surest way to preserve the bankruptcy court's role as a finder of fact. And then finally, judicial efficiency, that one is a difficult one. It's asymmetrical in this case, because this court, if it finds that it does have jurisdiction, it could decide everything at once, and then there would be no reason to go back to the bankruptcy appellate panel, of course. But that depends on first resolving the factual issues that have been brought on appeal. So it's putting the cart before the horse. If we were to decide that the BAP was wrong, that would resolve the case right now, wouldn't it? That's correct. And for that reason, I'd like to, if it's okay with your honors, I would like to spend my remaining time to just go over the points why I think the BAP decision should be affirmed, if this court does have jurisdiction. And there were two issues with that, because the BAP thoroughly reviewed the complaint at issue here and correctly determined that the request for attorney's fees was pleaded as a claim. And Federal Rule of Bankruptcy Procedure 7008B states that a request for attorney's fees shall be pleaded as a claim in a complaint. The definition section of the bankruptcy code defines a claim as a right to payment. And as outlined in the bankruptcy appellate opinion, the complaint requests an award of attorney's fees as a right to payment, based on Mr. Carey's breach of contract. And it specifically enumerated the aspects of the claim as the underlying debt, the interest, the costs, and the attorney's fees. And in his op- You know, if pleading as a claim means what claim means in normal pleading, this is a pretty skinny claim pleading. If pleading as a claim means you just have to plead, I want attorney's fees, that's a different question. Isn't it? Yes, I believe that's correct. So it depends on whether you use claim in the technical legal sense, perhaps, or whether you use it in sort of a more gestalt sense, I want attorney's fees. And pretty much what the complaint says is I want attorney's fees. I believe the complaint says more than that, because it provides the basis for the attorney's fees. It says the complaint says that it wants all of the debt owed by Mr. Carey. It wants all of that debt to be dischargeable. And it says that the debt includes attorney's fees. And it also refers to the original complaint that requests attorney's fees. So it sets forth the basis. And the independent effect of having the rule of 7008B is to require allegations that give notice of a right to payment of attorney's fees. At the time the complaint was drafted, no discovery had been made. So the general allegations were that there was a contract, the contract was breached, and we would like everything that is due as a result of the breach of contract. And we specifically said such amount includes attorney's fees. So I think it was more than the case is Odom. There's a case which the bankruptcy appellate panel distinguished. And Odom requested attorney's fees only in the prayer for relief. But as the bankruptcy appellate panel noted, this complaint asked for attorney's fees in the opening paragraph, in the preamble to the complaint. It mentioned it in the first paragraph. Paragraph 7 set the basis. Paragraph 10 mentioned attorney's fees. All those paragraphs were incorporated by reference. And then, again, in the prayer for relief, we requested attorney's fees. So it was fairly specific, even though it was just at the complaint stage. And it's easily distinguished from Odom. And as a second point in Odom, which is the case in which it was only in the prayer for relief, the court in that case said that if the agreement that had an attorney's fees clause had been the basis of the claim for attorney's fees, then the Odom court itself might have been inclined to award attorney's fees. So in this case, the underlying agreements that were breached by Mr. Carey did contain attorney's fees clauses. So what the Odom court was essentially stating was the benefit of the bargain rule that was followed in Chase Manhattan Bank. That case said that fraudulent conduct is best discouraged by applying the benefit of the bargain rule, providing a defrauded creditor all of its rights under the contract, including reasonable attorney's fees. So this case is distinguishable from precedent. And it clearly, as the bankruptcy panel determined, stated a claim for attorney's fees. Thank you. Thank you. Ms. Schumacher, have you explored with Mr. Young the possibility of resolving this case? Yes. That's all right. I don't want to. But it seems to me it's a case that would wisely be resolved because the expenses will spiral as we decided, and it's my view, that we decide a case that's submitted and we rule. And I think that's a risk that somebody is facing. We first, after the bankruptcy appellate panel. That's not something that we need to consider, and I don't want you to discuss it. I was merely trying to see how to. We do have a mediation service offered by the court, and if the two of you would like to try and mediate this thing, the panel would consider holding off on a decision until it's mediated. But the two of you would need to let us know pretty quickly. Okay. I'll discuss that with opposing counsel. Thank you, Your Honor. Mr. Young? Thank you, Your Honors. I have four seconds. I'll give you a minute. Okay. Just very briefly, there was a motion for attorney's fees for $43,000. I just conceded. If it gets sent down, it will be the $43,000, and I'm going to stand by that. There could be other motions, like a motion for the appeal, motion two for $60,000, or motion three for this appeal, attorney's fees. Those are separate things that we don't need to decide today. The question as to the $43,000 is before the court today. It's been briefed, and I plead that the court make a decision on the merits as to the $43,000 today. Thank you. Okay. If you would like to let us know whether you would like to mediate this, but you would need to let us know within the next day or so. Again, we offer mediation service through the court. If you'll let us know in the next day or two, we would strongly consider, you know, holding off on any decision that we might issue. We certainly understand the posture. Somebody signed a guarantee without recognizing what he was doing. But the legal effect of his actions is something that he can't argue about. And that's the case. I can understand why he didn't just want to write out a check, but I think his lawyer would wisely advise him that he's bound on this guarantee, unless there's a reason to set it aside. Don't you think that's the posture? Yes. Your Honor, in this case, Mr. Carey is not an unsophisticated person who's a real estate broker, and so he's familiar with the technology of deciding. No, we aren't. That's for you to discuss with somebody else, because we don't decide the case on the record that is before us and on the merits of what is before us. But it seemed to me there ought to be room to negotiate and resolve this matter, because we are going to rule, and you understood, I think, from the way the argument went this morning, that there's a real question of what our ruling would be, and our ruling might be that we don't have jurisdiction. I know you assume you can stipulate, but it's rare that a lawyer has the authority to stipulate and bind his client without first discussing it with his client. I'm not trying to give you advice, but that would be an interesting situation, because a client might then come back, well, with a different lawyer, and move to do this and that or the other. It's just a case that you ought to talk over and resolve. My client understands that this is one shot. All right, because the clock is ticking. All right. Thank you. Thank you very much. The court stands adjourned. No more unsolicited advice. I apologize for that. The court is in recess until tomorrow.
judges: Farris, Fernandez, Bybee